UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RAYMOND HAROLD KIMBLE, III**                      CIVIL ACTION

**VERSUS**                                           NO. 14-0625

**PAUL D. CONNICK JR., ET AL.**                      SECTION "J" (4)

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On May 1, 2014, the undersigned conducted an evidentiary hearing, pursuant to *Spears v. McCotter,* and its progeny.[1]

**I.   Background**

    **A.   Factual Background**

The plaintiff, Raymond Harold Kimble, III ("Kimble") filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, the Parish of Jefferson, Detective Stanley Brown, and District Attorney Paul D. Connick, Jr., alleging that he was falsely arrested on August 26, 2011, and imprisoned on a charge of simple burglary of an inhabited

---

[1]766 F.2d 179 (5th Cir.1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed.R.Civ.P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir.1991). *See also Miorana v. Gusman,* No. 13-0143, 2013 WL 2404117 (E.D. La. May 31, 2013).

dwelling.[2]

In his complaint, Kimble alleges that approximately 6:30 a.m. on August 26, 2011, the Jefferson Parish Detectives "attempted to kick down" the door of his girlfriend, Hayley Pickering's apartment.[3] Once Kimble and his girlfriend heard the disturbance, Kimble alleges that she opened the apartment door, and the police detectives pulled her out of the apartment. He alleges that Detective Stanley Brown ("Brown") informed him that the apartment was being searched for guns. Kimble alleges that Brown also informed him that he was being arrested on a charge of Simple Burglary of an Inhabited Dwelling. He alleges that his work "log book" and cell phone were the only objects taken from the apartment. Kimble also alleges that no guns were found in the apartment.[4]

Kimble alleges that after his arrest, he was transferred to the Jefferson Parish Detectives Bureau, where he was assisted by his attorney at the time, Hugo Chavez, in writing his statement. *Id.* He alleges that he was subsequently transferred to the Jefferson Parish Correctional Center and booked with Simple Burglary of an Inhabited Dwelling, pursuant to La. Rev. Stat. Ann. § 14:62.2.

Kimble also alleges that between his eightieth and eighty-fifth day of incarceration, after his attorney allegedly filed some sort of motion with the Court, he was "brought back to booking" by Detective Brown, and booked for "Possession of firearm or carrying concealed weapon by a person convicted of certain felonies," pursuant to La. Rev. Stat. Ann. § 14:95.1. He alleges that he was subsequently finger printed and brought to court for a bond hearing on the amended charge.[5] He contends that on the same day he was brought to court for the bond hearing, the charge of

---

[2]*See* R. Doc. 3, p. 5.

[3]*See e.g.*, R. Doc. 3, p. 5.

[4]*Id.*

[5]*Id.* at 6.

possession of firearm or carrying concealed weapon by a person convicted of certain felonies was accepted, and the initial charge of simple burglary of an inhabited dwelling was not accepted.

Kimble further alleges that in January 2013, he violated his parole so "that he could receive a release date."[6] He contends that subsequently, between the end of March 2013 and April 2013 his prior "case" and charges were dismissed. He further alleges that he was released from jail on parole on April 17, 2013.

On March 17, 2014, Kimble filed his *in forma pauperis* and *pro se* complaint, seeking damages against Defendants, Paul Connick, Jr., ("Connick"), Detective Stanley Brown ("Detective Brown") and Jefferson Parish, for attorney fees in the amount of $6,000 for his three attorneys, Hugo Chavez, Ronald Gillen, and John Fuller; for his alleged false imprisonment; for his emotional distress damages occasioned from his incarceration; for the alleged stress, anxiety and paranoia he suffers from following his incarceration; for the strain of the relationship between he and his daughter; for lost wages as a plumber; for money spent on collect calls, approximately $8,000, from the prison; and for attorney and filing fees occasioned by the filing of this action.[7]

    **B**.   *Spears* **Hearing**

On May 1, 2014, the undersigned conducted an evidentiary hearing, pursuant to *Spears v. McCotter*, and its progeny,[8] with the plaintiff and counsel for the defendants participating by conference telephone call. During the hearing Kimble provided further explanation and reiteration of his claims to the Court.

---

[6]*See* R. Doc. 3, p. 7.

[7]*See* R. Doc. 3, p. 8.

[8]766 F.2d 179 (5th Cir.1985). *See supra,* n. 1.

During the hearing Kimble also indicated his intent to voluntarily dismiss Jefferson Parish as a defendant in this matter. Therefore, pursuant to Fed. R. Civ. P. 41(a), this Court recommends that Jefferson Parish be dismissed from this action.

Kimble also clarified some of the allegations in his complaint. Specifically, he alleges that on August 26, 2011, he believed that the police may have wanted to enter due to him having violated his parole sometime in early January of 2011. He also alleges that upon Detective Brown's entry into the apartment on the morning of his arrest, he was informed that he was being charged with simple burglary, and that the detectives were searching the apartment for approximately twenty-three (23) handguns.

Kimble argues though, that there was never any physical evidence confirming his involvement with the burglary. Rather, he indicated that it was his belief that someone informed the authorities that he may have been involved with a burglary that occurred in July 2011.

Kimble reiterated that no guns were found in the apartment, and that the only evidence obtained and confiscated by the detectives was his work log book and his cell phone. He alleges that the log book established that he was working the day on which the burglary took place. He also alleges that he told Detective Brown that his co-defendant obtained the handguns but that he did not have them.

Kimble further explained that on August 26, 2011, after being arrested, he was booked on a charge of simple burglary. He indicated that he obtained an attorney, Hugo Chavez, who helped him through the initial booking process, to whom he paid $1,000.00.

Kimble further clarified that he remained incarcerated because he was under parole at the time he was arrested. He contends that on the eighty-third (83) day of his incarceration, his charge

of simple burglary was "thrown out." However, he alleges that on the eighty-fourth (84) day of incarceration he was re-booked on a charge of convicted felon in possession of a firearm and shortly thereafter he was taken to Commissioner's Court, where a bond was set and the charge was accepted. He also alleged that at this time, he was under representation of attorney Ronald Gillen.

Upon recommendation of his family, Kimble contended that after this hearing, he fired Gillen and obtained his last attorney, John Fuller. Kimble alleges that he remained incarcerated on these charges until April 2013, when the final charge of being in possession of firearm, pursuant to La. Rev. Stat. Ann. § 14.95.1 was "thrown out" completely. He contended that he was released after the dismissal of the latter charge.

As to Detective Brown, Kimble alleged that he named him as a defendant in this matter because he was the initial detective who arrested him, booked him on the simple burglary charges and he also re-booked him on the subsequent possession of a firearm charge. Upon questioning by the Court, Kimble indicated that Detective Brown made no statements about his decision to arrest him. He also indicated that at the time of his arrest, the detectives had a warrant for his arrest for a charge of simple burglary, as well as a warrant to search the premises for weapons.

He alleged that the search warrant had an attached affidavit of Chelsea Jenkins, the co-defendant Dustin Johnson's girlfriend, who attested that Kimble may have been involved in a burglary and could have been in possession of guns. He indicated that the burglary in question took place in Metairie, Louisiana, and was at a residential home of a gun collector.

As to Defendant Paul Connick Jr., ("Connick") Kimble argued that he was named as a defendant in this matter because the District Attorney who accepted the charge against him and made to the decision to prosecute him. He also indicated that Connick was the supervisory official

5

overseeing the Assistant District Attorneys and the investigation of the charges. Kimble alleged that he never had any interaction with Connick personally, and that he only had interaction with the Assistant District Attorneys under Connick's supervision. Kimble indicated that he did not know the names of the other attorneys, but that he would attempt to find these out and bring them to the Court's attention.

Lastly, Kimble reiterated that he was never found to be in possession of guns. He also contends that the initial charge of simple burglary was never accepted, and the amended charge of possession of a firearm was dismissed in April 2013. Kimble is now incarcerated on another charge of simple burglary, within which he indicated that he was arrested for in December 2013.

### C. Motion to Amend / Supplemental Complaint (R. Doc. 6)

On May 5, 2014, Kimble filed a **"Supplement Memorandum to 1983"** that the Court construes as a **Motion to Amend / Supplement Complaint (R. Doc. 6)** seeking to add the following additional parties to this action as defendants, Assistant District Attorneys, Brian Villalobos, Jeffrey Lagarde, and Vincent Paciere, who are all of the 24th Judicial District Court for the Parish of Jefferson. *See* R. Doc. 6, p. 1.

As an initial matter, he has not alleged any facts other than these attorneys roles in prosecuting the charges against him. Specifically, Kimble alleges that Brian Villalobos accepted the charge against him for the charge of convicted felon with a firearm, pursuant to La. Rev. Stat. Ann. § 14:95.1. *See* R. Doc. 6, p. 2. He alleges that Jeffrey Lagarde prosecuted the case from November 2011 through December 2012, and Vincent Paciere, prosecuted the case against him from January 2013 through its dismissal on April 4, 2013. *Id.* Kimble however alleges nothing further against these three assistant district attorneys, nor does he allege whether or not he intended to add these

parties in their official or individual capacities. Regardless of whether he seeks to add the three assistant district attorneys in their individual or official capacities into this § 1983 suit, his request is futile because any claims against the parties in either capacity would be frivolous.

To the extent Kimble seeks to add these defendants in their individual capacities, his request is futile, because assistant district attorneys enjoy absolute immunity from suit under § 1983 for their respective roles during the criminal proceedings. *See Mireles v. Waco*, 502 U.S. 9, 10 (1991) (judicial immunity from suit is absolute); *Van de Kamp v. Goldstein*, 555 U.S. 335, 340–49 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutor absolutely immune from individual liability under § 1983 regarding conduct "intimately associated with the judicial phase of the criminal process," including supervision and training of junior prosecutors regarding disclosure of potential impeachment evidence); *Butz v. Economou*, 438 U.S. 478, 510 (1978) (judicial and prosecutorial immunity are absolute for the same reasons); *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). For these reasons, Kimble's amendment to add these defendants in their individual capacities is futile and should be denied.

To the extent that Kimble's purported amendment sought to add these assistant district attorneys in their official capacities, he has failed to state a cognizable claim upon which relief may be granted as he has failed to allege that any of these individuals violated his constitutional rights. Rather, he identifies each of the assistant district attorney's role in prosecuting his case, but alleges nothing further against them. Because one of the traditional functions of a prosecutor is the duty to decide which charges to bring and whether to pursue a conviction in court, a suit against a prosecutor named in his or her official capacity is a suit against the entity he or she represents; in this case, that is the Parish of Jefferson, which was originally a named defendant. *See Kalina v.*

7

*Fletcher*, 522 U.S. 118, 125 (1997); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999);[9] *see also Kentucky v. Graham*, 473 U.S. 473 U.S. 159, 165 (1985).

An assistant district attorney, as a representative of the Parish, could be liable under § 1983 only if her actions were in execution of an unconstitutional Parish policy or custom which inflicted injury or damage upon the plaintiff. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Here, Kimble would have had to allege not merely that such an unconstitutional policy or custom exists, but that it was the proximate cause of his injury or damage, which he has not. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992); *Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir. 1982), *overruled on other grounds*, *Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986). Therefore, Kimble's amendment to add these defendants in their official capacities is also futile and thus, the **Motion to Amend (R. Doc. 6)** should be denied.

## II.     Standard of Review for Frivolousness

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).

---

[9]In *Burge*, the Fifth Circuit made clear that in Louisiana, a district attorney is not entitled to Eleventh Amendment Immunity afforded to the State. Instead, the district attorney is a functionary of the local parish government, whose liability is to be addressed under *Monell*, discussed *infra*. *Id.*

A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.    Analysis

Kimble seeks monetary and injunctive relief against the defendants in their official and individual capacities to redress his § 1983 claims related to his alleged false imprisonment in 2011. His claims, however, are frivolous for the following reasons.

#### A.    Claims Against District Attorney Paul Connick, Jr.

Kimble named District Attorney, Paul Connick, Jr., ("Connick") as a defendant in this matter.[10] Kimble however does not assert any allegations against Connick. He alleges however, that Connick was the district attorney at the time he was incarcerated as well as at the time his charges were dismissed in 2013. Connick however is immune from suit arising from his role as a prosecutor. To the extent he named Connick in his official capacity, Kimble has not alleged a claim against him or Jefferson Parish.

---

[10] The Court recognizes that in Kimble's original complaint he named Jefferson Parish as a defendant. However, as stated in the section entitled "*Spears* Hearing" Kimble indicated that he sought to voluntarily dismiss it from this action.

The Supreme Court has recognized that there are some officials whose duties require a full exemption from liability. Such officials include prosecutors in the performance of their official functions. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Yaselli v. Goff*, 275 U.S. 503 (1927). In order to determine whether an official is absolutely immune from suit, the proper focus is not the identity of the party claiming the immunity, but rather, his or her "role in the context of the case." *Mays*, 97 F.3d at 110.  In other words, immunity attaches to particular official's functions, not to the particular office he or she holds. *Forrester*, 484 U.S. at 229; *see also O'Neal v. Miss. Bd. of Nursery*, 113 F.3d 62 (5th Cir. 1997).

In the context of absolute prosecutorial immunity, immunity from suit extends to those acts "intimately associated with the judicial phase of the criminal process" which includes the presentation of the State's case, evaluating evidence, and interviewing witnesses in preparation for trial.  *Burns v. Reed*, 500 U.S. 478, 492 (1991).  Also, among the traditional functions of a prosecutor is the duty to decide which charges to bring and whether to pursue a conviction in court. *See Kalina v. Fletcher*, 522 U.S. 118, 125 (1997).

During the *Spears* Hearing, Kimble clarified that he named Connick in his role as a supervisory official over the Assistant District Attorneys that prosecuted the charges and investigation against him. Kimble has not however, alleged that Connick was personally involved in the investigation and / or prosecution against him.

Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on the claim for damages under §1983. A supervisory official, like Connick, would not be vicariously liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.

*See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). He would only be liable under § 1983 if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). Kimble does not allege that Connick was personally involved in the investigation and / or prosecution against him. He further does not indicate that in any way he notified Connick personally of his complaints.

Kimble has not demonstrated a personal connection that would render Connick liable under § 1983. Thus, his claims against Connick pursuant to supervisory liability are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### B. Claims Against Detective Brown

Kimble named Detective Brown as a defendant in this action because he was the initial detective who arrested him, booked him on the simple burglary charges and he also re-booked him on the subsequent possession of a firearm charge. Kimble alleges that he was arrested on August 26, 2011, and booked on Simple Burglary charges. He alleges that on his eighty-sixth (86) day in incarceration, he was re-booked on a charge of possession of firearm or carrying concealed weapon by a person convicted of certain felonies, pursuant to La. Rev. Stat. Ann. § 14:95.1, and made an appearance before the Court for a bond hearing and to accept the charge. *See e.g.,* R. Doc. 6, p. 3. Therefore, by Kimble's allegations, he made an appearance before the Court on or around November

21, 2011.[11]

Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)). *See See Burge v. Parish of St. Tammany*, 996 F.2d 786, 788 (5th Cir.1993) (citing *Hardin v. Straub*, 490 U.S. 536, 538-39(1989); *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992)).

For purposes of calculating the limitations period, a § 1983 cause of action, similar to a Louisiana tort claim, accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. *Wallace*, 549 U.S. at 388; *Jacobsen*, 133 F.3d at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). In Louisiana, personal injury claims are governed by La. Civ. Code art. 3492, which provides the prescriptive period for delictual actions, which a period of one year from the date of injury or damage.[12] *See Jacobsen*, 133 F.3d at 319 (citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)).

The United States Supreme Court has held that the statute of limitations for false arrest / false imprisonment claims begin to run at the "time the claimant becomes detained pursuant to legal process." *Lakhan v. Wale*, No. 10-1971, 2011 WL 39855 (E.D. La. Jan. 3, 2011); citing *Wallace*, 549

---

[11]The eighty sixth day was on Sunday, November 20, 2011. It is unlikely that Kimble made an appearance on that date, therefore, the appearance in which Kimble alleges likely took place on the next next business day, Monday November 21, 2011. *See* La. Code Crim. P. art. 13 (weekends and holidays not included in calculation when it would be the last day of the period).

[12]Article 3492 provides that: "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."

U.S. at 397; *see also Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir.2008). Therefore, the statute of limitations on plaintiff's false arrest/false imprisonment claims "commenced to run when he appeared before the examining [judge] and was bound over for trial." *Lakhan,* 2011 WL 39855 at *1; citing *Wallace*, 549 U.S. at 391.

Thus, for purposes of this lawsuit, Kimble would have had one year from his appearance before a judge to bring his § 1983 claims, against the defendants. According to Kimble, he knew immediately upon his August 26, 2011 arrest that he was allegedly being falsely arrested and / or imprisoned. Here, Kimble alleges that he was re-booked on the charge of possession of a firearm on the eighty-sixth day after his August 26, 2011 incarceration, and made an appearance before a judge the next business day, which was Monday, November 21, 2011. Therefore, prescription began to run on Kimble's claim on the next day, November 22, 2011. Kimble had one year from this date, or by Wednesday, November 21, 2012, to file the instant action.

The clerk of this Court filed Kimble's complaint on April 1, 2014, when pauper status was granted.[13] In the prisoner context, however, the date prison officials receive the complaint from the prisoner for mailing to the court is the time of filing for limitations purposes. *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Kimble dated his signature on the complaint on February 27, 2014, which is the earliest date appearing in the record on which he could have given the pleadings to prison officials for mailing to this Court.

Therefore, Kimble's complaint deemed filed on February 27, 2014, was filed 462 days after the limitations period expired on November 20, 2012. For this reason, his complaint should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted

---

[13]Rec. Doc. Nos. 1, 2, 3.

pursuant to 28 U.S.C. §§ 1915(e), 1915A, and 42 U.S.C. § 1997e.

## IV.    Recommendation

**IT IS RECOMMENDED** that Kimble's § 1983 claims against defendant, Paul Connick, Jr., and Detective Stanley Brown be **DISMISSED WITH PREJUDICE** as frivolous, for failure to state a claim for which relief can be granted, and/or for seeking relief against an immune defendant pursuant to § 1915(e) and § 1915A.

**IT IS FURTHER RECOMMENDED** that Kimble's § 1983 claim against Defendant, Jefferson Parish be **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 41(a).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[14]

New Orleans, Louisiana, this 10th day of June, 2014.

KAREN WELLS ROBY  
**UNITED STATES MAGISTRATE JUDGE**

---

[14]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.